---

(56 Misc. Rep. 565.)

### ÆTNA ELEVATOR CO. v. DEEVES et al.

(Supreme Court, Appellate Term. November 29, 1907.)

MECHANICS' LIENS—CONSENT OF OWNER—IMPROVEMENTS BY LESSEE — COVENANT TO REPAIR BY LESSEE.

A covenant in a lease obligating lessee to keep the premises in good order and repair during the term does not imply a consent by lessor, within Mechanic's Lien Law, Laws 1897, p. 516, c. 418, § 3, providing that a contractor or materialman who performs labor or furnishes material for the improvement of real property with the owner's consent shall have a lien;

there being a distinction between "improvements" and "repairs," within the contemplation of that section.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mechanics' Liens, §§ 72, 73.]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Ætna Elevator Company against Richard Deeves and others, demanding judgment that plaintiff had acquired a lien for labor performed and materials furnished, that there was due an amount specified, with interest and costs, together with such other relief as might seem just. Judgment for defendants, and plaintiff appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Wm. P. Martin (Alfred B. Nathan, of counsel), for appellant.

Kurzman & Frankenheimer (John Frankenheimer and Walter Frank, of counsel), for respondents.

GILDERSLEEVE, P. J. The facts are conceded by stipulation to be substantially as follows, viz.: On December 29, 1906, and for some time prior thereto, defendants were the owners of certain real estate; i. e., the Everett Hotel, on Seventeenth street and Fourth avenue. On March 6, 1906, when defendants were such owners, they leased said premises to a corporation known as the "Everett House Company." The lease was in writing, and was for a term of 21 years. Among other things the lease provided as follows, viz.:

"The party of the second part [the lessee; i. e., the Everett House Company] * * * agrees to keep the premises in good order and repair during said term at its own cost and expense."

Between November 15, 1906, and November 20, 1906, plaintiff performed certain work and furnished material for said Everett House Company, in connection with the repair of an elevator on said premises, at the agreed price and reasonable value of $227.32. The repairs in question were necessary to the proper working of the elevator. The defendants, however, deny that the repairs made to said premises were made with their consent, as owners or otherwise, or that they derived any pecuniary benefit from such repairs, or that the premises were enhanced in value by such repairs. No testimony was introduced in support of such denials, and no claim is made that the repairs were not properly done; while it is admitted by defendants, as we have seen, that such repairs were necessary to the elevator. The inference, therefore, the plaintiff claims, is that the value of the premises was enhanced to the extent of these repairs, and that defendants, as owners, derived a benefit from these necessary repairs by such enhanced value of their premises. Upon nonpayment of its claim by the Everett House Company the plaintiff filed a mechanic's lien against the premises on the 29th day of December, 1906, and subsequently brought this action, demanding judgment:

"First, that on December 29, 1906, it acquired a valid lien upon the interest of the defendants in the said premises; and, second, that there is now due to the plaintiff from the defendants the sum of $227.32, with interest from

the 20th day of November, 1906, and costs, together with such other and further relief as to the court may seem just."

Section 3 of the mechanic's lien law (Laws 1897, p. 516, c. 418) provides thus:

"A contractor or * * * materialman, who performs labor or furnishes material for the improvement of real property, with the consent or at the request of the owner thereof, * * * shall have a lien for the principal and interest of the value or the agreed price of such labor and materials upon the real property improved * * * from the time of filing a notice of such lien as prescribed in this article."

It is admitted that no formal request was made by the defendants for the repair of the elevator, nor any formal consent from them obtained; but the plaintiff claims there was an implied consent, arising from the stipulation in the lease from the defendants to the Everett House Company that the latter was "to keep the premises in good order and repair during said term." It will be observed that this is not a mere abstract permission to the lessee to make alterations or repairs, but that the defendants specifically imposed the duty of keeping the premises in good order and repair upon the lessee as an obligation and condition of the lease. It is claimed, therefore, that there is no application here of the doctrine of Hankinson v. Van Tine, 152 N. Y. 20, 46 N. E. 292, to the effect that an abstract permission by the owner to the lessee to make "alterations" did not amount to a consent by the owner, within the meaning of the statute, to the furnishing of labor and material by a third party. A distinction between a permission to make alterations and an obligation to make improvements seems to be approved by Chief Judge Cullen in the case of Rice v. Culver, 172 N. Y. 66, 64 N. E. 761. In the case of Tinsley v. Smith, 115 App. Div. 708, 101 N. Y. Supp. 382, the court says:

"Where the tenant covenants to make specific improvements or repairs, the landlord has been held to have consented thereto within the meaning of the statute."

In the case at bar the tenant covenanted generally to "keep the premises in good order and repair during the said term" of the lease. In the case of Rice v. Culver, supra, the court says (page 65 of 172 N. Y., page 762 of 64 N. E.):

"There is a marked distinction between the passive acquiescence of an owner, in that he knows the improvements are being made, * * * and his actual and express consent or requirement that the improvement should be done. It is the latter that constitutes the consent mentioned in the statute."

In the case at bar, as we have seen, the owners required the lessee to make "repairs"; but the word "improvements" is not mentioned. Again, in the above-cited case, at page 66 of 172 N. Y., page 763 of 64 N. E., Chief Judge Cullen says:

"The case [where permission to erect certain buildings was given] is entirely different from those in which the tenant covenanted by the lease to erect buildings or make improvements."

It seems to us, however, that the covenant in the lease obligating the lessee to "keep the premises in good order and repair during the said term" did not imply a consent, within the meaning of the statute, on

107 N.Y.S.—5

the part of the owners to the furnishing of the requisite labor and materials by a third party to make necessary repairs, although the repairs in question are conceded to have been necessary, and the charge therefor reasonable and proper, and though there is no dispute as to their being made in a proper and workmanlike manner, and we think that it was not error for the court below to give judgment for the defendants. There seems to be a sharp distinction between "improvements" and "repairs," and the statute refers only to "improvements" in its provision under consideration. The lien, therefore, should not be allowed, as defendant neither required nor consented to the making of improvements by the lessee in the sense contemplated by the statute.

The judgment should be affirmed, with costs. All concur.